David H. Bundy  
DAVID H. BUNDY, P.C.  
310 K Street, Suite 200  
Anchorage, AK 99501  
(907) 248-8431  
Attorney for Debtor


Filed on 6/7/2010

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

In Re: )
 )
ANCHORAGE SPORTSPLEX, INC., ) Case No. A-10-00475-DMD
 )
 ) Chapter 11
 )
 Debtor. )
_____)

**INTERIM CONSENT ORDER AUTHORIZING THE INTERIM**
**USE OF CASH COLLATERAL AND GRANTING RELATED RELIEF**

This matter is before the Court upon the Motion of the Debtor, Anchorage Sportsplex, Inc. (the "Debtor") for an Order Authorizing the Interim Use of Cash Collateral Pursuant to 11 U.S.C. § 363(c) (the "Motion"). The Court having considered the Motion and, in accordance with Fed. R. Bankr. P. 4001(b)(1) and Local Rule 4001-2, due and proper notice of the Motion having been given; and an interim hearing to consider the approval of the relief requested in the Motion having been held and concluded which resulted in, among other things, the scheduling of a final hearing and approving notice with respect thereto, the Court makes the following findings of fact and conclusions of law and authorizes the interim use of cash collateral on the terms hereof.

**Petition for Relief, Jurisdiction, and Venue**

A. On June 5, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (as

Interim Consent Order for Use of Cash Collateral – Page 1

amended, the "Bankruptcy Code"). The Debtor is now operating its business and managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee or examiner has been appointed.

B. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested herein are sections 105, 361, and 363 of the Bankruptcy Code, Bankruptcy Rule 4001(d), and Alaska Bankruptcy Rule 4001-2.

### Relationship Between the Debtor and the Indenture Trustee

C. Pursuant to a Trust Indenture (the "Indenture"), dated as of August 1, 2006, between the Anchorage Industrial Development and Export Authority (the "Authority") and Wells Fargo, National Association ("Wells Fargo"), predecessor in interest to U.S. Bank, National Association (the "Trustee"), as indenture trustee, the Authority issued its Anchorage Industrial Development and Export Authority Sports Facility Revenue Bonds (Anchorage Sportsplex Project), Tax Exempt Series 2006A and the Anchorage Industrial Development and Export Authority Sports Facility Revenue Bonds (Anchorage Sportsplex Project), Tax Exempt Series 2006B (together, the "Bonds").

D. Pursuant to a Loan Agreement (the "Loan Agreement") dated as of August 1, 2006, between the Authority and the Debtor, the Authority loaned proceeds of the Bonds to the Debtor.

E. The Authority pledged, assigned, and conveyed to the Trustee substantially all of the Authority's rights and interests under the Loan Agreement, in trust, as part of the security for payment of the Bonds.

F. To evidence the Debtor's obligations under the Loan Agreement, the Debtor executed and delivered a Promissory Note (the "Note"), dated August 1, 2006, payable directly to the Trustee in the original principal amount of $11,510,000, which is equal to the amounts payable to the Trustee under the Loan Agreement and the Bonds.

G. In connection with this transaction, Anchorage Community Development, LLC ("ACD") entered into a Land Lease (the "Lease") with the Debtor, dated August 1, 2006, pursuant to which ACD leased certain real property to the Debtor for a term of 50 years.

H. To secure the Debtor's obligations under the Indenture, Loan Agreement, and Note, the Debtor executed a Leasehold Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Financing Statement (the "Deed of Trust"), dated as of August 1, 2006, pursuant to which the Debtor granted the Trustee liens upon, and security interests in, substantially all of the Debtor's property (the "Prepetition Collateral").

I. To induce the Trustee to enter into this transaction, Grace Community Church, Inc. d/b/a ChangePoint ("ChangePoint") and GraceAlaska a/k/a Grace Alaska, Inc. ("GraceAlaska" and, together with ChangePoint, the "Guarantors") executed and delivered to the Trustee a Guaranty Agreement (the "Guaranty" and, together with the Indenture, Loan Agreement, Note, Lease, Deed of Trust, and the documents related thereto, the "Bond Documents"), dated as of August 1, 2006, whereby the Guarantors, *inter alia*, jointly and severally, with some limitation, guaranteed to the Trustee the full and prompt payment of any Operating Deficit, defined in the Guaranty to include certain principal and interest payments on the Bonds. Grace Community Church, Inc., d/b/a Change Point, GraceAlaska, Inc., and Anchorage Community Development, LLC, dispute the nature of the guarantees.

J. The Bond Documents are currently in default due to, *inter alia*, the Debtor's

failure to satisfy certain covenants and to make certain payments of principal and interest as required by the Bond Documents.

K.  As of the Petition Date, the outstanding principal and interest accrued on the Bonds was as follows:

|  | Principal | Interest* | Total* |
|---|---|---|---|
| Tax-Exempt Series 2006A | $11,005,000.00 | $167,806.89 | $11,172,806.89 |
| Taxable Series 2006B | $505,000.00 | $8,206.25 | $513,206.25 |
| **Total** | **$11,510,000.00** | **$176,013.14** | **$11,686,013.14** |

*Plus interest accruing on and after May 1, 2010

L.  Under the Bond Documents, the Debtor also is obligated to pay additional interest, fees, and expenses, including but not limited to, attorneys fees and expenses and other fees and expenses incurred in connection with the enforcement and collection of the Bonds, which accrue both prepetition and postpetition.

M.  The Bonds are secured by liens and security interests (collectively, the "Liens") in and upon the Prepetition Collateral, including any cash or cash proceeds of the Prepetition Collateral (collectively, and as otherwise defined in section 363(a) of the Bankruptcy Code, the "Cash Collateral").

## Use of Cash Collateral

N.  The Debtor has a critical and continuing need to obtain funds and use Cash Collateral in order to avoid immediate and irreparable harm to its business and its estate.

O.  Without such funds, the Debtor will not be able to meet its payroll and other direct operating expenses or obtain goods and services needed to carry on its business during this critical period in a manner that will avoid irreparable harm to the Debtor's estate, creditors, and other parties in interest. At this time, the ability of the Debtor to finance its operations and the availability to the Debtor of sufficient working capital and liquidity through the use of Cash

Collateral is vital to the confidence of the Debtor's vendors and suppliers of goods and services, and to the preservation and maintenance of the going concern value of the Debtor's estate.

P. The Trustee has consented to the Debtor's proposed use of Cash Collateral in accordance with the budget attached hereto as **Exhibit "A"** (the "Budget") and on the terms and conditions set forth in this Order. The Trustee also consents to the Debtor's use of Cash Collateral to pay required fees to the Office of the United States Trustee.

Q. Pursuant to the Bankruptcy Code, the Debtor is required to provide adequate protection to the Trustee in respect of the use of Cash Collateral and potential decline in value thereof.

R. Good, adequate, and sufficient cause has been shown to justify entry of this Order. The Debtor represents that the relief requested by this Motion is necessary, essential, and appropriate and is in the best interests of and will benefit the Debtor, its estate, and creditors, as granting the limited relief set forth in this Order pending the Final Hearing on the Motion will provide the Debtor with the necessary liquidity to, *inter alia*, (i) minimize disruption to the Debtor's business and on-going operations, (ii) preserve and maximize the value of the Debtor's estate for the benefit of all creditors, and (iii) avoid immediate and irreparable harm to the Debtor, its creditors, business, employees, and assets. The Court concludes that permitting the Debtor to use the Cash Collateral, on the terms and conditions herein prescribed, is vital to avoid immediate and irreparable harm to the Debtor's estate, and good cause has been shown for the immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2).

S. The Cash Collateral usage and adequate protection granted hereunder have been negotiated in good faith and at arm's length among the Debtor and Trustee, and the terms of the Cash Collateral usage and adequate protection are fair and reasonable under the circumstances,

reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

## Notice

T.     Pursuant to Bankruptcy Rule 4001(b)(1), and the local rules of this Court, the Debtor has provided notice of the Motion by CM/ECF, or facsimile, to the following parties, or in lieu thereof, to their counsel:  (a) the office of the United States Trustee; (b) the Trustee; (c) the Debtor's 20 largest unsecured creditors; (d) any party in interest which has filed a notice of appearance pursuant to Bankruptcy Rule 2002(g); and (f) any other party which claims a lien or security interest in or to the Debtor's real or personal property.  Such notice constitutes sufficient notice under Bankruptcy Rule 4001 and Local Rule 4001-2 and no other notice need be given.

**THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT:**

1.     The Motion for authority to use Cash Collateral and grant adequate protection, *nunc pro tunc*, as of the Petition Date, is granted on an interim basis.  Subject to the terms hereof, this Order is valid immediately and is fully effective upon its entry.

2.     The Debtor is authorized, pursuant to section 363(c)(2)(A) of the Bankruptcy Code, to use Cash Collateral in accordance with the Budget and to pay US Trustee fees for a period from the Petition Date through and including the earliest to occur of:  (a) the payment in full or refinancing of the Obligations in their entirety, (b) the occurrence of a "Termination Event" (as hereinafter defined), and (c) the conclusion of a final hearing on the Debtor's request for use of Cash Collateral (the "Termination Date").  The Budget and the Termination Date may be extended or modified by written agreement of the Debtor and Trustee without further order of this Court or further notice to any parties.

3. Notwithstanding anything contained herein, the Trustee shall have no obligation, pursuant to this Order or otherwise, to allow the Debtor to use any Cash Collateral following the Termination Date. Debtor reserves the right to seek Court approval of the continued use of Cash Collateral after the Termination Date.

4. As adequate protection in accordance with sections 361, 362, and 363(e) of the Bankruptcy Code for the use of Cash Collateral, the imposition of the automatic stay, or the diminution of value of the Prepetition Collateral (collectively, the "Adequate Protection Obligations"), the Trustee is hereby granted the following, *nunc pro tunc*, as of the Petition Date (the "Adequate Protection Liens"):

 a. continuing valid, binding, enforceable, and perfected, first-priority security interests in, and liens upon, all Prepetition Collateral under the same terms and conditions provided under the Bond Documents (excluding such terms and conditions as may be abrogated under the Bankruptcy Code or as are conditioned upon the solvency, financial condition, or financial performance of the Debtor);

 b. replacement security interests in and perfected, first-priority liens upon and against all real and personal property of the Debtor including, without limitation, all rights and claims of the Debtor against third parties and all moneys, refunds, rebates, or other property received from or payable or deliverable by any third parties (the "Postpetition Collateral"); and

5. As further adequate protection for the Trustee, to the extent that the liens and security interests granted herein are inadequate to provide adequate protection to the Trustee, the claims of the Trustee shall be entitled to administrative priority pursuant to section 507(b) of the Bankruptcy Code, with priority over any and all claims against the Debtor of any kind whatsoever (the "Superpriority Claims"). Such Superpriority Claims shall have priority over any

other claims for administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code.

6. Subject to section 506(b) of the Bankruptcy Code, interest on the Obligations shall continue to accrue at the rate applicable under the Bond Documents as in effect immediately prior to the Petition Date. Any fees, costs, and charges shall continue to accrue under the Bond Documents to the extent provided for thereunder and allowed under section 506(b) of the Bankruptcy Code.

7. The automatic stay extant under section 362(a) of the Bankruptcy Code shall be, and it hereby is, modified to the extent necessary (a) to permit the Trustee to receive and collect payments and proceeds in respect of the Prepetition Collateral, including any Cash Collateral or adequate protection payments, and for the Trustee to apply the same in accordance with the Indenture, or as otherwise provided under the terms and provisions of this Order; (b) permit the Trustee to apply any bond funds in its possession in accordance with the terms of the Bond Documents; and (c) otherwise to effectuate the terms and provisions of this Order.

8. The Debtor shall execute and deliver to the Trustee all such agreements, financing statements, instruments, and other documents as the Trustee reasonably may request to evidence, confirm, validate, or perfect the Adequate Protection Liens granted pursuant hereto. All Adequate Protection Liens granted herein to secure repayment of the Adequate Protection Obligations shall be, and hereby are, deemed perfected effective as of the Petition Date, and no further notice, filing, or other act shall be required to effect such perfection; provided, that, if the Trustee shall, in its sole discretion, choose to file such mortgages, financing statements, notices of liens and security interests, and other similar documents, all such mortgages, financing

statements, or similar instruments shall be deemed to have been filed or recorded at the time and on the date of entry of this Order.

9. The Debtor shall continue to produce all financial statements, reports, and other documents required under the Bond Documents in the manner and the timeframes specified therein. In addition, the Debtor shall submit weekly cash flow reports to the Trustee and other interested parties and shall submit to the Trustee within five days of the end of each month a report of monthly receipts versus proposed cash usage in accordance with the Budget.

10. The Debtor shall deposit all moneys and revenues into and pay all expenses from one or more bank accounts that will be capable of being monitored electronically by the Trustee, on a daily basis, and will arrange for the Trustee to have the ability to so monitor the accounts.

11. In the event that the Debtor fails to timely satisfy its obligations as provided in this Order, the Trustee shall have the right, upon five (5) business days written notice to counsel for the Debtor, the Debtor's counsel, the United States Trustee, and any committee of unsecured creditors appointed by the United States Trustee (the "Committee"), to an expedited hearing on its request for relief from the automatic stay pursuant to § 362(d) of the Bankruptcy Code, with notice only to the above parties, and thereafter to exercise any rights and remedies hereunder, under the Bond Documents, or under applicable law.

12. The occurrence of any of the following shall constitute a "Termination Event" under this Order except to the extent the Trustee waives in writing its rights and remedies in respect of such Termination Event: (a) entry of an order dismissing this Chapter 11 case; (b) entry of an order converting this Chapter 11 case to one under Chapter 7 of the Bankruptcy Code; (c) Any liens, claims, and other adequate protection granted to the Trustee herein, including, but not limited to, the Adequate Protection Liens and the Superpriority Claims shall

survive the occurrence of a Termination Event and shall continue until the Debtor either has paid in full or refinanced the Obligations in their entirety.

13. The provisions of this Order shall be binding upon and inure to the benefit of each of the Trustee, the Debtor, and their respective successors and assigns, Based on the findings set forth in this Order, in the event any or all of the provisions of this Order are hereafter modified, amended, or vacated by a subsequent order of this or any other Court, no such modification, amendment, or vacation shall affect the validity, enforceability, or priority of any Lien or claim authorized or created hereby or thereby.

14. All payments made by the Debtor in respect of the Adequate Protection Obligations pursuant to this Order are deemed earned and shall be nonrefundable. Notwithstanding anything herein, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, any of the rights, claims or privileges (whether legal, equitable, or otherwise) of the Trustee under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, its right to, *inter alia*, request additional adequate protection of its interests in the Prepetition Collateral or the Cash Collateral or relief from or modification of the automatic stay extant under section 362 of the Bankruptcy Code.

15. This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof. The provisions of this Order shall be and hereby are immediately valid and enforceable.

16. The provisions of this Order shall not be modified, impaired, or superseded by any subsequent Order, and this Order shall survive entry of, and shall govern with respect to any conflict with, any subsequent Order of Court, including the terms, conditions, and provisions of any plan of reorganization or liquidation.

17. A final hearing to consider approval of the Motion will be held before this Court on **Thursday, July 8, 2010, at the hour of 11:00 a.m.** (the "Final Hearing"). Pursuant to Bankruptcy Rule 4001(b)(3), proposed counsel to the Debtor shall provide notice of the Final Hearing and a copy of this Order to (a) the U.S. Trustee, (b) the Trustee, (c) counsel to any Committee, or in the alternative, the Debtor's 20 largest unsecured creditors; (d) those parties in interest that have requested notice pursuant to Bankruptcy Rule 2002(g); and (e) parties claiming a lien or security interest in the Debtor's property. Any objections to the relief sought at the Final Hearing shall be in writing, state the basis therefore, and be filed and served on counsel for the Debtor and counsel for the Trustee so as to be received no later than **July 6, 2010.**

Dated: June 7, 2010

    /s/ Donald MacDonald IV
The Honorable Donald MacDonald IV
United States Bankruptcy Judge

Serve:    D. Bundy, Esq.
    E. Schaffer, Esq.
    J. Siemers, Esq.
    K. Black, Esq.
    K. Hill, Esq.
    U. S. Trustee
    Calendar

06/07/10

CONSENTED TO:

/s/David H Bundy
David H. Bundy, Esq.
DAVID H. BUNDY, P.C.
310 K Street, Suite 200
Anchorage, AK 99501
Phone:  (907) 248-8431
Facsimile:  (907) 248-8434

Counsel for Debtor, Anchorage Sportsplex, Inc.



/s/
John C. Siemers, Esq.
BURR, PEASE & KURTZ, P.C.
810 N Street, Suite 300
Anchorage, AK 99501
Phone:  (907) 276-6100

and

Eric A. Schaffer, Esq.
REED SMITH LLP
Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA  15222
Phone:  (412) 288-3131
Facsimile:  (412) 288-3063

Counsel to U.S. Bank, National Association, as Trustee