David H. Bundy
DAVID H. BUNDY, P.C.
310 K Street, Suite 200
Anchorage, AK 99501
(907) 248-8431
Attorney for Debtor

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| ANCHORAGE SPORTSPLEX, INC., | ) | Case No. A-10-00475 |
| | ) | |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

## STATUS REPORT

Anchorage Sportsplex, Inc., submits this status report pursuant to AK LBR 2081-1 (c): as required by the Court's order of June 7, 2010.

1.     Debtor is an Alaska non-profit corporation; it has a board of directors but no equity owners or members. Debtor owns and operates an inflatable sportsdome in Anchorage, which has become a conspicuous feature on the local landscape as it is one of the largest such structures in existence. "The Dome," as it is popularly called, is used by a wide variety of sports and community groups especially during the long Alaska winter season. The Dome measures 601 x 290 feet and contains a full size

Status Report – Page 1

competition soccer field surrounded by a running track. Additional information can be found at www.thealaskadome.com.

2. The Dome occupies a portion of the property originally developed for the Alaska Seafood plant on Raspberry Road near Minnesota Boulevard. The plant itself was purchased by Grace Alaska d/b/a ChangePoint ("CP"), an affiliate of which, Anchorage Community Development LLC ("ACD") owns the fee interest in the Dome property, and has leased it to ASI on a 50 year ground lease.

3. Development and construction of the Dome cost about $10.5 million. The 50 year leasehold cost $1.2 million up front. Reserves, prepaid interest and very substantial bond issuance costs brought the total project to $13.9 million, of which $11.5 million was raised by the issuance of tax-exempt bonds to a group of mostly institutional investors.

4. The Debtor has not been able to meet the required debt service payments on its bonds, and has filed this case in order to reorganize its debt structure so that it can continue operations.

5. Since the construction of the Dome, ASI and ACD, as the owners and taxpayers, have been in a dispute with the Municipality of Anchorage on whether the dome improvements and the underlying land qualify for municipal property tax exemption under AS 29.45.030. In addition the property owners have appealed the 2010 assessed valuation of the property.

6. Section 4.1 of the ground lease between the Debtor and ACD imposes on the Debtor the obligation to pay all real property taxes assessed against the property, including the improvements, the Debtor's leasehold interest, and the underlying fee simple interest owned by ACD. Because the Municipality has a statutory first lien to secure payment of real property taxes, the amount owed to the Municipality for past taxes, and the amounts required to be paid in the future, directly affect the funds which would otherwise be available to pay the bondholders and other creditors. Therefore resolving the outstanding tax issues is one of the keys to designing a reorganization plan. In round numbers, if the Municipality prevails the tax obligation will be approximately $200,000 per year. If the property is taxable, but the Debtor wins the valuation argument, the tax could be cut in half.

7. The financial package that allowed the Dome to be constructed includes a Guaranty Agreement dated August 1, 2006 under which Grace Community Church, Inc d/b/a ChangePoint and Grace Alaska agreed to guarantee up to $300,000 per year of the Debtor's "Operating Deficit" as defined in the document. Considering the income earning history and possible potential of the Dome, this could conceivably require CP to pay $300,000 per year for the life of the project, not a pleasing prospect for CP which is itself a non-profit. Although CP as guarantor would have the right to repayment from the Debtor, if the Debtor runs deficits indefinitely (which it is likely to do if the debt service requirements are not modified), then the Debtor will never be able to repay CP for any

Status Report – Page 3

payments it makes on the guaranty. The bondholder trustee and CP have been in discussions about possible modifications to the guaranty but no solution is in sight.

8.      In order for this case to be resolved, the disputes among the key players must be resolved by agreement or judicially: the Debtor and the bondholders must determine the amount of secured debt, the payment terms, and the treatment of the unsecured deficiency; the bondholders and the CP/ACD parties must determine the amount and duration of CP/ACD's obligation to guarantee the Debtor's operating losses; and the Debtor/ACD taxpayers and the Municipality must determine the taxable status and taxable value of the Dome property.

9.      Except for the tax appeals, the Debtor is not currently in any litigation, and does not anticipate any. However, the Debtor has been advised that the trustee for the bondholders has filed a petition to determine the liability of CP on the guarantee. This petition, currently pending in state court in Minnesota (!) will hopefully proceed rapidly enough to allow this case to proceed toward a solution.

10.      A plan of reorganization for the Debtor is not by itself that hard to devise; the Debtor's accounting and bookkeeping systems are in relatively good shape and the bondholders' trustee seems to have confidence in the results. There is a current appraisal of the Debtor's property and a term sheet for a possible plan has been circulated. The contingencies are the amount of past and future tax liability and the obligations, or lack thereof, of the CP parties on the guaranty.

11.     Unless the tax and guaranty issues are resolved soon, the Debtor plans to file a plan which projects payments based on the assumption the tax disputes are lost, and the CP parties make no further payments on the guaranty. Then any revenue saved or generated from the tax and guaranty disputes can be assigned as additional payments and the plan's feasibility will not depend on the outcome of those battles.

12.     The Debtor believes it will be possible for it to file a plan and disclosure statement along these lines by August 15, 2010.

DATED this _____ day of July, 2010.

DAVID H. BUNDY, P.C.
Attorney for Debtor

By: ___/s/ David H. Bundy_____
       David H. Bundy

**CERTIFICATE OF SERVICE**
  The undersigned hereby certifies that on the 6th day of July, 2010, the foregoing document was served by ECF on

-   U. S. Trustee
-   John Siemers, Esq.
-   Eric Schaffer, Esq.
-   Kathy Black, Esq.

By___/s/ David H. Bundy_____
       David H. Bundy