David H. Bundy
DAVID H. BUNDY, P.C.
310 K Street, Suite 200
Anchorage, AK 99501
(907) 248-8431
Attorney for Debtor

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| ANCHORAGE SPORTSPLEX, INC., | ) | Case No. A-10-00475 |
| | ) | |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**OPPOSITION TO MOTION TO COMPEL TAX PAYMENTS, AND MOTION FOR
EXTENSION OF TIME TO MAKE REQUIRED PAYMENTS**

Anchorage Sportsplex, Inc. opposes the motion of Anchorage Community Development, LLC ("ACD") to require immediate payment of the 2010 real property taxes assessed against the property which the Debtor holds on a long term ground lease from ACD and against the improvements the Debtor has constructed on the leasehold. Late payment of the taxes is not prejudicial to ACD, and even if payment of the taxes is otherwise required, the Debtor's inability to pay all the taxes at this time has been created by ACD and its affiliates' unwillingness to meet their obligations to the Debtor.

1.      Debtor is an Alaska non-profit corporation; it has a board of directors but no equity owners or members. Debtor owns and operates an inflatable sportsdome in Anchorage, which has become a conspicuous feature on the local landscape as it is one of the largest such structures in existence. "The Dome," as it is popularly called, is used by a wide variety of sports and community groups especially during the long Alaska winter season. The Dome measures 601 x 290 feet and contains a full size competition soccer field surrounded by a running track. Additional information can be found at [www.thealaskadome.com](www.thealaskadome.com).

2.      The Dome occupies a portion of the property originally developed for the Alaska Seafood plant on Raspberry Road near Minnesota Boulevard. The plant itself was purchased by Grace Alaska d/b/a ChangePoint ("CP"), an affiliate of which, Anchorage Community Development LLC ("ACD") owns the fee interest in the Dome property, and has leased it to ASI on a 50 year ground lease.

3.      Development and construction of the Dome cost about $10.5 million. The 50 year leasehold cost $1.2 million up front. Reserves, prepaid interest and very substantial bond issuance costs brought the total project to $13.9 million, of which $11.5 million was raised by the issuance of tax-exempt bonds to a group of mostly institutional investors.

4.      The Debtor has not been able to meet the required debt service payments on its bonds, and has filed this case in order to reorganize its debt structure so that it can continue operations.

5. Since the construction of the Dome, ASI and ACD, as the owners and taxpayers, have been in a dispute with the Municipality of Anchorage on whether the dome improvements and the underlying land qualify for municipal property tax exemption under AS 29.45.030. In addition the property owners have appealed the 2010 assessed valuation of the property. Despite the litigation, payment of the taxes for 2010 at the invoiced amount is due and the amount is as ACD states, $212,491.33. One half of this amount was due June 15, and the balance is due August 15.

6. Section 4.1 of the ground lease between the Debtor and ACD imposes on the Debtor the obligation to pay all real property taxes assessed against the property, including the improvements, the Debtor's leasehold interest, and the underlying fee simple interest owned by ACD. Debtor filed its petition on June 5, 2010 and ACD says the Debtor must now pay the tax in full as payment is a post-petition obligation under the lease.

7. Debtor currently has a bit less than $200,000 in the bank. The summer months are cash flow negative for the Debtor; revenue will increase in the autumn as sports groups move indoors. Payment of all the taxes now will force immediate layoff of staff and closure of the facility, and severely jeopardize the prospects of reorganization. Non-payment of the taxes at this time cannot prejudice the property owner, as the Municipality will simply accrue late charges and interest on funds paid late, and cannot begin any foreclosure for over a year.

8. As ACD acknowledges the Municipality has a first lien on the property to secure payment of the taxes; the Municipality's lien is non-recourse and ACD has no

personal obligation to pay the Municipality. ACD's theoretical risk is loss of its fee interest to a tax foreclosure, but the value of the fee interest is negligible, as the Debtor holds a fifty-year ground lease for which ACD was paid $1.2 million in advance. The present value of the reversion some 47 years from now is virtually nothing, so unlike the normal commercial landlord ACD has very little to lose even if for some reason the taxes are never paid, and nothing at all to lose if payment of the taxes is simply deferred during reorganization. U. S. Bank, as trustee for the bondholders, holds a deed of trust on the Debtor's leasehold and improvements. In order to protect its lien, the trustee will eventually have to pay the Municipal tax bill if the Debtor does not.

9. Actually, as the Court will understand, the Debtor is being caught in a game of "chicken" between the bondholders and the ACD/CP parties. Everyone in this case understands that the Debtor's operation, which makes money on a going concern basis, should not be allowed to shut down. ACD and CP, having sponsored the Debtor's creation in the first place, don't want the Debtor to starve, and CP expects that the bondholders don't want that to happen either as their collateral would then decline further in value. By bringing this motion even though fully aware of the Debtor's finances, ACD is counting on the bondholders' unwillingness to see Debtor close, and believes the Debtor will receive a DIP loan to keep the taxes paid.

10. That ACD/CP should expect the bondholders to finance the taxes is at least ironic. As the Court will be aware from the Debtor's status report, ACD's affiliate CP is obligated to provide $300,000 per year to support the Debtor's losses, but CP has refused to make this payment for 2010; if CP were to make this payment, then payment

of the 2010 taxes would not be a problem. ACD should not be allowed to take advantage of the leverage in the lease when it has created the very problem of which it now complains.

11. Section 365 (d)(3) allows the Court to extend for 60 days from the petition date any payment that falls due within that time. If, despite the arguments above, the Court requires the Debtor to pay the 2010 taxes at this time, then the Debtor moves that it be granted an extension until August 4, 2010 in which to pay the June 15 tax installment.

DATED this 6th day of July, 2010.

DAVID H. BUNDY, P.C.
Attorney for Debtor

By: /s/ David H. Bundy
 David H. Bundy

**CERTIFICATE OF SERVICE**
 The undersigned hereby certifies that on the 6th day of July, 2010, the foregoing document was served by ECF on

- U. S. Trustee
- John Siemers, Esq.
- Eric Schaffer, Esq.
- Kathy Black, Esq.

By /s/ David H. Bundy
 David H. Bundy