UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

In re:

ANCHORAGE SPORTSPLEX, INC.,

Debtor.

Case No. A10-00475-DMD
Chapter 11

**Filed On
9/21/10**

### MEMORANDUM ON PENDING TAX-RELATED MOTIONS

A hearing on the debtor's motion to determine tax liabilities, and the Municipality of Anchorage's ("MOA") motions for abstention, for clarification re: discovery, and for protective order and motion to quash subpoena, came before the court for hearing on September 16, 2010. After considering the arguments of counsel presented at the hearing and reviewing the pleadings which have been filed, I find it is inappropriate in this case to exercise jurisdiction under 11 U.S.C. § 505(a) to determine tax liability. The debtor's motion to determine tax liabilities will therefore be denied. The MOA's motions for abstention and for clarification re: discovery will also be denied, as moot, but its motion for protective order and to quash subpoena will be granted.

The debtor, Anchorage Sportsplex, Inc. ("Sportsplex"), is an Alaska non-profit corporation. It has a board of directors but no equity owners or members. Sportsplex operates an inflatable sportsdome in Anchorage. The Dome is unique because of its size. It contains a full size soccer field surrounded by a running track. It is a year-round sports facility used by a variety of sports and community groups, predominantly during the winter. The Dome is located on a portion of the old Alaska Seafood plant property on Raspberry Road off Minnesota Boulevard. The plant was originally purchased by Grace Alaska, d/b/a

ChangePoint, a non-profit corporation. ChangePoint owns 99% of Anchorage Community Development, LLC ("ACD"), which is a for profit corporation. ACD holds the fee interest in the parcel on which the Dome is located. In 2006, ACD entered into a 50 year ground lease with Sportsplex. When the lease was entered, the parcel was unimproved land. Sportsplex leased the land for the purpose of constructing and operating the Dome. The lease specified that any structures or other improvements to the parcel would belong to Sportsplex. Under the lease, Sportsplex was to pay ACD $1.2 million up front as "prepaid rent." Sportsplex was to also pay all real property taxes assessed on the parcel or its improvements, as "additional rent."

The cost to build the Dome was substantial. Development and construction costs were about $10.5 million. Reserves, prepaid interest and bond insurance costs brought the total cost, including Sportsplex's up front payment, to $13.9 million. Of this sum, $11.5 million was paid through the issuance of tax-exempt bonds. US Bank is the indenture trustee for the holders of the tax-exempt bonds. The debtor has been unable to meet the required debt service payments on these bonds.

The debtor has also been unable to pay the outstanding real property taxes due the MOA, which total about $200,000.00 annually. The taxes are assessed against both the parcel owned by ACD and the improvements thereon, which were constructed by the debtor and which, according to the ground lease, belong to it.

Sportsplex and ACD have been engaged in a variety of disputes with the MOA regarding the appropriate amount of real property tax payable and whether there is any tax due at all. The debtor contends no tax liability exists because, as a charitable organization, its assets are exempt from such taxation. Alternatively, the debtor contends tax can only be

2

assessed on ACD's remainder interest in the parcel. These disputes cover the time period of 2008 through 2010. Some of these disputes are still at the administrative level and the balance are pending in state superior court. None have been fully resolved at this point.

As a result of its inability to service debt and pay accruing taxes, Sportsplex filed for chapter 11 relief on June 5, 2010. It filed a motion to determine tax liability under 11 U.S.C. § 505(a)(1) on July 6, 2010. US Bank and ACD have joined in the motion. The MOA opposes the motion. It has moved for abstention on the tax issues, for a protective order and to quash a discovery subpoena which has been served upon it, and for clarification re: discovery. The MOA notes that it has not filed a proof of claim in this bankruptcy proceeding, nor has it assessed any tax liability directly against the debtor. The taxes have instead been assessed against ACD, who holds the fee simple interest in the parcel.

Tax Liability and § 505

11 U.S.C. § 505(a)(1) provides:

> Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to a tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.[1]

Subsection 505(a)(2) lists three circumstances in which a bankruptcy court cannot determine a tax. The MOA agrees that none of these circumstances apply here.

---

[1] 11 U.S.C. § 505(a)(1).

3

At first blush it appears that this court may determine the MOA tax liability. On its face, § 505(a)(1) could apply to virtually any tax dispute. However, the Ninth Circuit has adopted a narrow view of this statute. In *American Principals Leasing Corp. v. United States*,[2] the court found that there was no bankruptcy jurisdiction under this statute to determine the tax liability of non-debtor partners for the activities of debtor partnerships. The court stated:

> Despite section 505's broad language, "virtually all the courts which have considered the issue most recently concluded that § 505(a) does not extend the bankruptcy court's jurisdiction to parties other than the debtor." These courts have noted that a literal reading of section 505 would have the absurd result of turning the bankruptcy courts into a second tax court system. Indeed, the legislative history of section 505 makes clear that the section was intended only to "permit determination by the bankruptcy court of any unpaid tax liability *of the debtor.*"[3]

The court concluded that § 505 "grants bankruptcy courts jurisdiction to determine any *tax liability* of the debtor . . . [but] does not grant the bankruptcy courts jurisdiction to determine the *tax consequences* for third parties of a debtor's activities."[4] The MOA, relying on *American Principals*, argues that this court cannot determine tax liability under § 505 because this would require a determination of ACD's, rather than the debtor's, liability for real property taxes.

---

[2] 904 F.2d 477 (9th Cir. 1990).

[3] *American Principals,* 904 F.2d at 480-81 (citations omitted, emphasis in original).

[4] *Id.* at 481.

US Bank has vigorously opposed the MOA's motions. It offers a number of arguments to support its contention that Sportsplex, rather than ACD, should be considered the true owner of the real property. First, the bank contends Sportsplex, by virtue of the duly recorded 50-year ground lease, became the owner of a fee simple determinable interest in the property. US Bank is wrong. "An estate in fee simple determinable is created by any limitation which, in an otherwise effective conveyance or devise of land, creates an estate in fee simple and provides that the estate shall automatically expire upon the occurrence of the stated event."[5] US Bank is trying to bootstrap the lease between ACD and Sportsplex into a fee simple transfer. It doesn't work. Nothing in the lease indicates an intent to convey a fee simple interest to the debtor. Section 1.1 of the lease states that the "Landlord . . . hereby agrees to lease to Tenant and Tenant hereby agrees to lease from Landlord, the property."[6] Section 18.17 of the lease specifies that "no provision contained in this Lease . . . shall be deemed to create any relationship between Landlord and Tenant other than the relationship of a lessor and lessee."[7] ACD did not convey a fee simple interest to Sportsplex. Under the terms of the lease, the debtor is a lessee and a tenant.

US Bank also argues that the MOA has wrongfully placed a lien against the debtor's property, consisting of the improvements it made to the real property. Under the lease, Sportsplex was to use the premises "solely for the construction and operation of a multi-purpose sports facility with an inflatable dome (the 'Improvements'), to be used as an

---

[5] 28 AM. JUR. 2D *Estates* § 32 (footnotes omitted).

[6] ACD's Mem. in Supp. of Mot. to Compel Payment of Real Property Taxes, filed Jun. 17, 2010 (Docket No. 22), Ex. A at 2.

[7] *Id.*, Ex. A at 16.

5

indoor sports facility," and Sportsplex "shall hold fee simple title to the Improvements."[8] While the improvements to the property may be assets of this bankruptcy estate under 11 U.S.C. § 541(a)(1), the determination of property rights and interests in property are generally governed by state law.[9] Neither the Bankruptcy Code nor the terms of the lease can override the provisions of the Anchorage Municipal Code ("AMC") which govern the taxation of real property. The AMC defines real property as "land, whether subdivided or not, all buildings, structures, improvements and fixtures of any kind thereon, and all possessory rights and privileges belonging or pertaining thereto."[10] The AMC further provides that "[r]eal property is assessed to the owner of record as shown in the records of the district recorder."[11] ACD is the record owner of the real property on which the Dome is situated. In accordance with the AMC, ACD has been assessed for all improvements to such real property, even though Sportsplex owns those improvements. Under the MOA's tax scheme, ACD has been assessed with the real property taxes as record owner of the property. The MOA has not levied taxes directly against Sportsplex.

US Bank maintains that ACD's interest in the land is nominal, about $340,000.00 of the $4.15 million total land value. The bank says most of the value for the property is contained in the long-term lease and the inflatable dome owned by Sportsplex. It suggests that only ACD's remainder interest in the property should be assessed, and cites

---

[8] *Id.*, Ex. A at 3, ¶ 5.1.

[9] *Gaughan v. Dittlof Revocable Trust (In re Costas)*, 555 F.3d 790, 793 (9th Cir. 2009), *citing Butner v. United States*, 440 U.S. 48, 54 (1979); *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992).

[10] AMC 12.05.020.

[11] AMC 12.15.020.

6

*Fairbanks N. Star Borough Assessor's Office v. Golden Heart Util., Inc.*,[12] in support of this contention. *Golden Heart* is distinguishable, however. That case dealt with the taxation of a leasehold interest located on tax-exempt property owned by a governmental entity. US Bank contends the holding in *Golden Heart* could be applied here, too, so that the ownership interest in the property could be divided into two parts: ASD's taxable remainder interest and Sportsplex's tax exempt interest. However, the holding in *Golden Heart* is not applicable to situations involving private property. The court noted:

> [T]he assessment of leases of tax exempt property requires valuation methods different from the assessment of private property that is subject to a lease . . . [I]n a normal lease, no distinction is made between the possessor and the individual holding the reversionary interest when values are assessed. Instead, the reversioner and possessor sort out the tax liability in a private arrangement. Inquiring into the value of the possessory and reversionary interest is important, however, when the reversionary interest is tax exempt. Because the reversion is not taxed, some method of valuing the tenant's possessory interest must be employed to account for the value of the reversion.[13]

The Sportsplex lease involves private property. *Golden Heart* is inapplicable here.

US Bank argues that the property should not be taxed because it is used for charitable purposes. This issue goes to the merits of the tax dispute, rather than the issue of

---

[12] 13 P.3d 263 (Alaska 2000).

[13] *Golden Heart*, 13 P.3d 271, citing *De Luz Homes v. County of San Diego*, 290 P.2d 544 (Cal. 1955).

jurisdiction, and hinges entirely on the application of state and local law.  It will not be considered here.

The bankruptcy court's exercise of jurisdiction under § 505 is discretionary. The court "*may* determine the amount and legality of any tax."[14]  For the reasons stated above, I decline to exercise jurisdiction over the tax disputes between ACD, Sportsplex and the MOA.

Remaining Issues

The MOA has asked this court to abstain from considering the debtor's motion to determine tax liabilities.  Because I am denying the debtor's § 505 motion, the issue of abstention is moot.  The MOA's motion for abstention will be denied on this basis.

The MOA has also moved for clarification regarding discovery.  No further discovery from the MOA is required in this bankruptcy proceeding regarding the debtor's tax liabilities, however, because the municipal tax issues will not be determined here.  For this reason, the MOA's motion for clarification will be denied.  Discovery as to the state court and administrative tax proceedings may continue, once the automatic stay has been lifted.

The MOA has moved to quash a subpoena and to obtain a protective order regarding proposed discovery on its tax disputes with the ACD and the debtor.  This motion has merit and will be granted.

An order and judgment will be entered in accordance with this memorandum.

---

[14] 11 U.S.C. § 505(a)(1) (emphasis added).

8

DATED:  September 21, 2010

                BY THE COURT

                /s/ Donald MacDonald IV
                DONALD MacDONALD IV
                United States Bankruptcy Judge

Serve:  D. Bundy, Esq.
       K. Black, Esq.
       S. Lewis, Esq.
       J. Siemers, Esq.
       D. Ennis, Esq.
       P. Weiss, Esq.
       U. S. Trustee
            9/21/10